**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-20166

(Summary Calendar)
_____

WPF OF DELAWARE, INC.,

Plaintiff-Appellant,

versus

CITY OF HOUSTON,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas
(H-96-CV-3287)

November 19, 1998

Before EMILIO M. GARZA, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

WPF of Delaware, Inc. ("WPF") appeals the district court's dismissal of its claims with prejudice. WPF contracted with the City of Houston ("City") that it would build a facility for composting solid waste. The contract provided that it could be terminated if WPF did not obtain necessary permits and licenses by January 10, 1992; the City terminated the contract after WPF failed

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to meet this deadline.  WPF sued the City for breach of contract, and, after a bench trial, the district court dismissed WPF's action with prejudice.  WPF challenges the district court's conclusions that (1) the City is not estopped from terminating the contract, and (2) the City did not waive its right to terminate the contract. We affirm the district court's ruling.

I

WPF argues that the district court erred in concluding that estoppel should not be applied against the City.  To establish estoppel against the government, WPF must prove misconduct by the government as well as the four traditional elements of estoppel, which include reasonable reliance on the conduct of the government.  *See In the Matter of Taylor*, 132 F.3d 256, 263 (5th Cir. 1998).  We review the application of estoppel *de novo*.  *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 881 (5th Cir. 1991).  *See also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)(stating bench trial factual findings reviewed for clear error and legal conclusions reviewed *de novo*).

WPF alleges that it relied reasonably upon a letter written on the Mayor's letterhead by Everett Bass, the Director of the Public Works Department.  Bass's letter, in response to a request for an extension on the contract's deadline, stated:

> The City staff is amenable to placing this item on the Council's agenda in the future, providing that current state law, which excludes Municipal Solid Waste compost from the 40% reduction goal, is amended so that your process is acceptable as a reduction technique.  In response to WPF's inquiry, the Public Works Department has no intention of initiating any action to terminate the existing contract between WPF and the City in the near future; nor will it do

-2-

so in the longer term if state law is amended as indicated above.

The Mayor signed his name under the word "Approved."  WPF alleges that, through the Mayor, the City adopted the commitment made by Bass.  The Mayor is tied into the obligation, WPF contends, because the letter was on his letterhead.  WPF reads the word "amendable" to obligate the Mayor to place a contract extension on the City Council's agenda.  Based on these reasons, WPF asserts that it relied reasonably on the "commitment letter" from the Mayor.

Under Texas law, persons who contract with governmental units are charged by law with notice of the limits of the authority of the governmental unit.  *See, e.g., Base-Seal, Inc. v. Jefferson County*, 901 S.W.2d 783, 788 (Tex. App.))Beaumont 1995, writ denied).  The City Council could only act through its governing body.  *See, e.g. Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex. App.))Dallas 1983, writ ref'd n.r.e.).  Texas law also provides that statements or acts of the mayor or other officers or governing body members are ineffectual.  *See, e.g., City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.))Texarkana 1994, writ denied).  WPF concedes it "knew it had to have City Council approval for an amendment," but states it, "did rely on the letter to the extent it expected the mayor to make good on his promise."  Given that the Mayor could not act for the City Council, WPF relied unreasonably on the Mayor's letter.  This unreasonable reliance cannot estop the City

-3-

from terminating the contract.

WPF contends that the reliance was reasonable because it received another letter from Bass that stated Bass had no intention of recommending that the contract be terminated. WPF acknowledges that the letter advised WPF that "the Mayor and City Council are free to act independent of any recommendation I [make]." WPF states that it ignored this warning, due to the earlier letter from the Mayor. WPF cannot base estoppel on the latter letter from Bass, however, because no credible evidence existed that Bass or the Public Works Department initiated termination of the contract. We conclude WPF relied unreasonably on the letters from the Mayor and Bass, and thus estoppel is not warranted.

## II

WPF argues that the district court erred in concluding that the City did not waive its right to terminate the contract. Waiver being a question of fact, we review the district court's conclusion for clear error. *See Placid Oil Co. v.* Humphrey, 244 F.2d 184, 189 (5th Cir. 1957).

WPF alleges specifically that the Mayor held the right to terminate the contract, and thus could effect a waiver, because the contract provides that the Mayor could act as part of the Governing Body of Houston. WPF's actions belie its asserted construction of the contract because, despite the "commitment letters," WPF continued to seek a City Council amendment to the contract. WPF also admitted that it knew it needed Council

-4-

approval to amend the contract. Only the City Council could amend the contract, and the Mayor did not hold that right. Thus, only the City Council could waive the right to terminate the contract.

WPF argues that the Mayor acted as an agent for the City. WPF also stated to the contrary: "there is no need to search for apparent authority, since WPF in all of the letters it writes was fully aware that it needed Council approval of an amendment to fund its project fully." The district court found that the Mayor never had actual or apparent authority to terminate the contract, and therefore the Mayor's actions cannot be conceived as the City's waiver of its right to terminate the contract. This finding is not clearly erroneous. Thus, the letters of Bass and the Mayor were insufficient to waive the City's right to terminate the contract.

The district court noted also that any waiver could not be effective. Under Texas law, a waiver may be effective after the expiration of the time for performance only if time is not a material part of the agreed performance and nonperformance does not materially affect the value received by the obligor. *See United States Fidelity & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex. 1971); *Fairfield Fin. Group, Inc., v. Gawerc*, 814 S.W.2d 204, 209 (Tex. App.))Houston [1st Dist.] 1991, no writ). When the City executed the contract with WPF, it had a contract with Browning-Ferris, Inc. ("BFI"). The deputy director of Public Works testified that the City had specifically

-5-

negotiated WPF's deadline to obtain the permits.  The City wanted to have an operable composting facility before the City had to renegotiate its contract with BFI.  The district court stated, and WPF does not dispute, that WPF's failure to obtain permits in time materially affected the City's leverage in negotiating a new contract with BFI.  The district court did not clearly err in finding that a waiver could not be effective.

III

For the foregoing reasons, we AFFIRM the rulings of the district court.